IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZAKENI LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 15-926-SLR |
| ) | |
| SPYR, INC. f/k/a EAT AT JOE'S, LTD. ) | |
| ) | |
| Defendant. ) | |

Robert D. Goldberg, Esquire of Biggs & Battaglia, Wilmington, Delaware.  Counsel for Plaintiff.  Of Counsel:  Evan M. Newman, Esquire and Allen Schwartz, Esquire of Newman Law, PC.

Steven L. Caponi, Esquire of K&L Gates LLP and Adam V. Orlacchio, Esquire of Blank Rome, LLP, Wilmington, Delaware.  Counsel for Defendant.  Of Counsel:  Stephen M. Orlofsky, Esquire, and Erik G. Fikry, Esquire of Blank Rome, LLP.

**MEMORANDUM OPINION**

Dated: August 24, 2016
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On October 13, 2015, Zakeni Limited ("plaintiff") filed a complaint alleging, inter alia, breach of contract against SPYR, Inc. ("defendant") for failure to pay its obligations related to two convertible series I debentures. (D.I. 1 at ¶ 1) Presently before the court is defendant's motion to dismiss the complaint for failure to state a claim. (D.I. 11) The court has jurisdiction pursuant to 28 U.S.C. § 1332.[1]

## II. BACKGROUND

### A. Parties

Plaintiff is an investment corporation incorporated in Nassau, Bahamas. (D.I. 1 at ¶ 5) Defendant is a holding company incorporated under the laws of the State of Nevada with its principal place of business in Denver, Colorado. Defendant's stock is traded on the OTCQB under the symbol "SPYR." SPYR, Inc. was formerly known as Eat at Joe's, Ltd. and traded on the OTCQB under the ticker symbol "Joes." Defendant has wholly-owned subsidiaries in the digital publishing and advertising industry and in the food service industry. (Id. at ¶ 6)

### B. Debentures

Plaintiff is the holder of two convertible series I debentures. (D.I. 1 at ¶ 2) The first debenture provided that defendant would be obligated to pay interest of eight percent on the principal sum of $900,000.00 from the issue date of on or about July 31, 1998. (Id. at ¶ 11) The second debenture provided that defendant would be obligated

---

[1] Venue is proper as the agreements between the parties require that any action to enforce the debentures be brought in this District. (D.I. 1 at ¶ 8)

to pay interest of eight percent on the principal sum of $600,000.00 from the issue date of on or about September 2, 1998. (*Id.* at ¶ 25) On the third anniversary of the original issue date, defendant was obligated to make a mandatory payment of principal and interest. (*Id.* at ¶ 12) Defendant did not make these payments in or about 2001. (*Id.* at ¶¶ 16, 30)

From 1998 through 2011, defendant included the debentures as a balance sheet line item in its annual reports. (*See e.g.*, D.I. 14, ex. D at Zakeni53, ex. E; D.I. 12, ex. A at SPYR15, exs. B-K) In 2001, defendant inserted the following language into its annual report: "The Company needs to obtain additional financing to fund payment of obligations . . . . Management believes these efforts will generate sufficient cash flows from future operations to pay the Company's obligations and realize other assets. There is no assurance any of these transactions will occur." (D.I. 12, ex. A at SPYR24) The 2002 and 2003 annual reports included similar statements. (*Id.*, ex. B at SPYR52, ex. C at SPYR79) Beginning in 2004, defendant's annual reports recited:

> On July 31, and September 2, 1998, the Company sold its 8% convertible debenture in the aggregate principal amount of $1,500,000 to an accredited investor pursuant to an exemption from registration under Section (4)(2) and/or Regulation D.
>
> The material terms of the Company's convertible debentures provide for the payment of interest at 8% per annum payable quarterly, mandatory redemption after 3 years from the date of issuance at 130% of the principal amount. Subject to adjustment, the debentures are convertible into Common Stock at the lower of a fixed conversion price ($1.82 per share for $900,000 principal amount of debentures; $1.61 per share for $600,000 principal amount of debentures) or 75% of the average closing bid price for the Company's Common Stock for the 5 trading days preceding the date of the conversion notice. Repayment of indebtedness is secured by a general lien on the assets of the Company and guarantee by 5 of the Company's subsidiaries.

2

(D.I. 12, ex. D at SPYR110) The same statement was included in defendant's annual statements through December 31, 2011, published in 2012. (*Id.* at exs. E-K)

In 2013, defendant's annual statement for the fiscal year ending December 31, 2012 included the following statement:

> As of December 31, 2012, the Company recognized an extraordinary gain of $2,043,702 due to the write-off of the Company's convertible debentures . . . Since approximately 2004, the Company has tried repeatedly to contact the lender and its principals regarding the remaining balance owed by the Company on the convertible debenture. The Company continued to accrue interest on the debenture through December 31, 2005, when it was determined less than probable that any further payments would be made. No claims have been filed against the Company regarding these debentures. The Company's attorney has determined the six year statute of limitations under New York state law has expired, and that no further payments are due from the Company. Based on this information, the Company has written off the balance of the convertible debenture on the balance sheet of $2,043,702, and recorded an extraordinary gain of the same amount.

(D.I. 12, ex. L at SPYR416) Plaintiff demanded payment under the debentures by letters dated July 10, 2015 and August 27, 2015, as well as information regarding conversion into shares, with no response by defendant. (D.I. 1 at ¶ 37)

## III. STANDARD OF REVIEW

A motion filed under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-

3

part analysis when reviewing a Rule 12(b)(6) motion. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016). In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim." Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp., Inc.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at *4 (quotation marks, citation, and emphasis omitted).

4

As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## IV. ANALYSIS

Under New York law, an action upon a contractual obligation or liability, express or implied, must be commenced within six years.[2] *See* N.Y. C.P.L.R. § 213(2). The limitations period begins to run when the cause of action accrues. *See* N.Y. C.P.L.R. § 203(a). "A cause of action for breach of contract ordinarily accrues and the limitations period begins to run upon breach." *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2007). At bar, the breach of contract occurred when SPYR, Inc. failed to make a mandatory payment of principal and interest in 2001. (D.I. 1 at ¶ 12) The mandatory redemption dates for the series I debentures were July 31, 2001 and September 2, 2001, respectively, at which time plaintiff's causes of action accrued and the limitations period began as a result of non-payment. (D.I. 1 at ¶¶ 16, 30, 43) Without an

---

[2] Both parties agree that New York law should be applied in this case based on the debentures. (D.I. 9 at 3)

5

extension, the six-year statute of limitations period for breach of contract for non-payment would ordinarily have expired in 2007.

"[The] limitations period for an accrued debt may be reset by the debtor pursuant to New York General Obligations Law § 17–101, which provides that a signed, written acknowledgement of the debt will recommence the limitations period." *Moore v. Candlewood Holdings, Inc.*, 714 F. Supp. 2d 406, 409 (E.D.N.Y. 2010). New York General Obligations Law § 17–101 states:

> An acknowledgement or promise contained in a writing signed by the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take an action out of the operation of the provisions of limitations of time for commencing actions under the civil practice law and rules other than an action for the recovery of real property. This section does not alter the effect of a payment of principal or interest.

"A writing, in order to constitute an acknowledgement of a debt, must recognize an existing debt and contain nothing inconsistent with an intention on the part of the debtor to pay it." *Estate of Vengroski v. Garden Inn*, 114 A.D.2d 927, 928 (N.Y. App. Div. 1985) (citation omitted). All of the circumstances of an individual case must be considered. "The mere fact that the debt was carried on defendant's books and tax returns would not, in and of itself, constitute the required acknowledgement." Instead, whether the acknowledgement imports an intention to pay is the critical determination. *Id.* at 928 (citations omitted). "[U]nder New York law—the continued carrying of an item on corporate or financial records operates to revive the statute of limitations, under a theory that the records reflect the continued validity of an old debt." *Candelarie v. Sci. Innovations, Inc.*, 2009 WL 2424727 (E.D.N.Y. Aug. 28, 2009); *see also Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 932 (S.D.N.Y.1982) (citation omitted) (A debtor's

6

acknowledgment of its obligation to creditor in its annual report and fact that it carried debt on its books for at least two years amounted to "clear recognition of the continuing validity of the obligation.").

At bar, defendant listed the debentures as a line item in its annual reports beginning in 1998 and made general statements regarding its debts starting in 2001. From 2005 to 2012, defendant specifically called out the debentures in its publically disseminated annual reports. After defendant published its 2012 annual report in 2013, wherein it stated that it was writing off the debentures, plaintiff demanded payment by letters dated July 10, 2015 and August 27, 2015. Receiving no response, plaintiff brought the instant action on October 13, 2015. Defendant argues that, as a matter of public policy, listing the debentures in the annual reports as required by law, without more, should not suffice as an acknowledgment of debt with an intention to pay as needed to toll the statute of limitations. This argument is weakened by defendant's statement in its 2013 annual report that "[s]ince approximately 2004, the Company has tried repeatedly to contact the lender and its principals regarding the remaining balance owed by the Company on the convertible debenture." The court cannot discern on the record at bar what communications defendant is referencing. Taking the evidence in the light most favorable to plaintiff, the court concludes that defendant sufficiently acknowledged the debt within the applicable statutory period (prior to 2007) and, by doing so, demonstrated an ongoing intent to pay. Under the circumstances at bar, this acknowledgement suffices to toll the statute of limitations.[3]

---

[3] In light of this conclusion, the court does not reach plaintiff's equitable estoppel argument.

## V. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (D.I. 11) is denied. An appropriate order shall issue.